UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOHN CASCIANI,

                              Plaintiff,

                                                                          <u>DECISION AND ORDER</u>

                                                                          09-CV-6519L

                        v.

TOWN OF WEBSTER,
RONALD NESBITT, Town Board Supervisor,
DONALD HAUZA, Assistant Public Works Commissioner,
Both in Their Individual and Official Capacities,

                              Defendants.
_____

        While the maxim, "If at first you don't succeed, try, try again," may be sound advice for everyday living, it is not always a good rule to follow where litigation is concerned.  One week after this Court dismissed a civil rights lawsuit ("*Casciani I*") against the Town of Webster, New York ("Town") and Town Supervisor Ronald Nesbitt, the plaintiff, John Casciani, filed another suit against the Town, Nesbitt, and another town official, Donald Hauza, alleging many of the same facts and claims.  That new action also followed this Court's denial of plaintiff's motion to amend his complaint in *Casciani I* on the ground that allowing the amendment would be futile, since the additional claims in the proposed amended complaint–some of which also appear in the present action–would be subject to dismissal for failure to state a claim.[1]

        Defendants in the present, *i.e.* second, action have moved for judgment on the pleadings dismissing the complaint under Rule 12(c) of the Federal Rules of Civil Procedure.  For the reasons that follow, the motion is granted, and the complaint is dismissed.

---

[1] Since this Court found no merit in either the original or the proposed amended complaint in the prior action, plaintiff and his counsel may have been better served by heeding the adage attributed to W. C. Fields, who reputedly stated, "If at first you don't succeed, try again. Then quit.  No use being a damn fool about it." *See* http://www.notable-quotes.com/f/fools_quotes.html.

**BACKGROUND**

Much of the factual background of this case is set forth in this Court's October 6, 2009 Decision and Order granting summary judgment for the defendants in *Casciani I*. *See Casciani v. Nesbitt*, 659 F.Supp.2d 427, 430-33 (W.D.N.Y. 2009).[2] Familiarity with that decision, which was affirmed by the Second Circuit the following year, *see* 392 Fed.Appx. 887 (2d Cir. 2010), *cert. denied*, ___ U.S. ___, 131 S.Ct. 2096 (2011), is assumed. In general, however, plaintiff alleged in that action that the defendants had violated his rights under the First and Fourteenth Amendments to the United States Constitution in connection with the defendants' enactment and enforcement of an ordinance ("the ordinance") prohibiting any private aircraft from taking off or landing anywhere within Webster. Plaintiff, a Webster resident, alleged that he owned a helicopter, for which he had constructed a landing pad on his property, and that defendants prohibited him from flying his helicopter. He alleged that they did so in violation of plaintiff's right to equal protection, and in retaliation for plaintiff's previous exercise of his First Amendment rights.

The Court found all of those claims to be meritless. In my decision, I held that the ordinance was facially valid, that plaintiff had failed to present evidence supporting an equal protection claim under any of the several theories upon which he had relied, and that plaintiff had likewise failed to demonstrate the existence of any genuine issues of material fact in regard to his First Amendment retaliation claim.

Undeterred by this Court's rulings, plaintiff, represented by the same counsel, filed the complaint in the instant action on October 13, 2009. Plaintiff filed an amended complaint as of right on October 21, 2009.

The sixty-five-page amended complaint sets forth lengthy allegations, many of which are virtual duplicates of the allegations that plaintiff made in *Casciani I*. Plaintiff asserts that those

---

[2]The defendants in *Casciani I* had moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Because plaintiff submitted affidavits and other materials outside the pleadings, the Court converted the motion to a motion for summary judgment under Rule 56, pursuant to Rule 12(d).

allegations are simply "background evidence ... pursuant to *Jute v. Sunstrand*." Dkt. #2 ¶ 21. That is a reference to a case decided by the Second Circuit in 2005, in which the court held that "evidence of an earlier alleged [discriminatory or] retaliatory act [that occurred before the commencement of the limitations period] may constitute relevant background evidence in support of [a] timely claim ... [and] may be considered to assess liability on the timely alleged act." *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 176–77 (2d Cir. 2005) (internal quotation marks and citation omitted).[3]

In his amended complaint here, plaintiff has alleged some additional acts that occurred after the complaint in *Casciani I* was filed, and which were not alleged in either the pleadings or in plaintiff's other papers in that action.[4] He alleges that defendant Nesbitt made certain disparaging comments about plaintiff in a local newspaper. Amended Complaint ¶¶ 144-49, 166-81. Plaintiff also alleges that the Town increased the assessment on several properties that he owned, in retaliation for his filing and prosecution of the *Casciani I* action. *Id.* ¶¶ 155-57, 184.

In addition, plaintiff alleges here that defendant Hauza, the Town's assistant public works commissioner, "threatened" two elderly neighbors of plaintiff to coerce them into attending a Town meeting to "complain" about plaintiff, and that Hauza "even induced them to write an editorial about the Plaintiff in the newspaper disparaging the Plaintiff." *Id.* ¶ 159. Plaintiff further alleges that Hauza "unduly delayed a routine approval" of a permit application that plaintiff had filed, "for no other reason that [sic] to harass and retaliate against the plaintiff ... ." *Id.* ¶ 161.

Based on these allegations, the amended complaint asserts three causes of action. The first is asserted against the Town, Nesbitt, and Hauza, and alleges that they retaliated against plaintiff for having exercised his First Amendment rights by filing his prior lawsuit challenging the ordinance.

---

[3]As explained in more detail below, the court in *Jute* was concerned with limitations issues, not with *res judicata*.

[4]Some of the facts alleged in the complaint here were not alleged in the complaint in *Casciani I*, but were alleged in plaintiff's papers in opposition to defendants' motion for summary judgment in that case.

Oddly, this cause of action as set forth in the complaint repeats plaintiff's allegation from his prior lawsuit that defendants also were motivated "by the fact that [plaintiff] is an Italian American resident of the Town of Webster," Dkt. #2 ¶ 184, although this claim as pleaded is limited to a First Amendment claim and does not assert a claim for national-origin discrimination.

The second cause of action asserts a claim against the Town and Nesbitt for a violation of plaintiff's equal protection rights. The precise theory behind this claim is not apparent from the face of the complaint, as it alleges a hodgepodge of "improper considerations" motivating the alleged disparate treatment of plaintiff, including "his prior federal lawsuit, ... sheer malice, ... [and] the fact that he is an Italian American ... ." Dkt. #2 ¶ 191. Plaintiff alleges that defendants' acts "constitute selective and arbitrary treatment" in violation of the Fourteenth Amendment. Dkt. #2 ¶ 192.

Plaintiffs' third cause of action asserts a claim against the Town and Nesbitt for defamation under New York law. This claim is based on certain statements that Nesbitt allegedly made in the *Webster Post* newspaper.[5] On June 4, 2008, the *Post* ran a piece authored by Nesbitt, in which he denied Casciani's accusations of discrimination against Italian-Americans, and opined that Casciani "owes the residents of the town of Webster an apology for his allegations that this community is a haven for discrimination against Italian Americans." Dkt. #2 ¶ 194. Plaintiff alleges that Nesbitt's statements were libelous *per se* and that they have caused plaintiff to suffer mental anguish and loss of his good reputation in the community. The complaint also refers to plaintiff's "termination," *see* Dkt. #2 ¶ 196, although it is not clear to what that refers.

## DISCUSSION

**I. Res Judicata**

Defendants contend that all of plaintiff's claims are barred under the doctrine of *res judicata*, or claim preclusion. That doctrine, which applies under both federal and New York law, "provides

---

[5]These statements also form part of the basis for plaintiff's retaliation claim.

that [a] final judgment on the merits of an action precludes the parties ... from relitigating issues that were or could have been raised in that action." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 195 (2d Cir. 2010). The doctrine "appl[ies] in 'later litigation if [an] earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action.'" *In re Adelphia Recovery Trust*, 634 F.3d 678, 694 (2d Cir. 2011) (quoting *EDP Med. Computer Sys., Inc. v. United States*, 480 F.3d 621, 624 (2d Cir. 2007) (bracketed text in original; additional internal quote omitted).

Applying these standards here, I conclude that all of plaintiff's claims are barred by *res judicata*. First, there is no dispute that this Court's summary judgment decision dismissing the complaint in *Casciani I* constituted a final judgment on the merits. The parties are also the same, with the exception of Hauza, who was not named in *Casciani I*. The addition of Hauza, however, does not preclude the application of *res judicata* here, since Hauza acted in his role as an official of the Town, with respect to the same underlying dispute. *See In re Bear Stearns Companies, Inc. Securities, Derivative, and ERISA Litigation*, 763 F.Supp.2d 423, 545 (S.D.N.Y. 2011) ("the doctrines of *res judicata* and collateral estoppel bar claims against parties not named in the prior suit"); *Cameron v. Church*, 253 F.Supp.2d 611, 623 (S.D.N.Y.2003) ("*Res judicata* operates to preclude claims, rather than particular configurations of parties; Plaintiff's addition of new defendants ... does not entitle him to revive the previously-dismissed claims.")

The instant action is also plainly based on the same "nucleus of operative facts" as *Casciani I*. *New Phone Co., Inc. v. City of New York*, 498 F.3d 127, 129 (2d Cir. 2007). For page after page, the amended complaint in this case reads like a retelling of the allegations set forth in *Casciani I*, including plaintiff's purchase and operation of his helicopter, the Town's obduracy in attempting to prevent plaintiff from using his helicopter, the Town's more favorable treatment of other Webster aircraft owners, and so on.

Plaintiff attempts to avoid the obvious *res judicata* implications of all this by arguing that paragraphs 22 through 137 of the amended complaint in this case are merely pleaded as "background evidence" for his retaliation claim. In support of that argument, plaintiff cites *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166 (2d Cir. 2005).

*Jute* is inapposite, however. That case addressed the extent to which a plaintiff may plead, and a court should consider, allegations of events that occurred beyond the applicable limitations period as background evidence in support of a timely claim. *See id.* at 176-77. *Jute* did not involve *res judicata* at all.

Plaintiff has, as stated, added *some* new allegations in the present action. That alone is not dispositive, however. A plaintiff cannot avoid the bar of *res judicata* simply by repeating allegations from a prior, dismissed lawsuit, recasting them as "background evidence," and appending a handful of additional allegations, particularly when the new allegations concern the same parties and types of events as the prior action.

The Second Circuit has rejected similar attempts to skirt the claim-preclusion doctrine, and has made clear that courts should take a commonsense approach to determining when claims are sufficiently factually related for the doctrine to apply. In *Monahan v. New York City Dep't of Corrections*, 214 F.3d 275 (2d Cir. 2000), for example, in which a group of correction officers challenged their employer's sick leave policy, the court held that the plaintiffs' assertion of new incidents arising from the application of the challenged policy was insufficient to bar the application of *res judicata* arising from the settlement of a prior lawsuit concerning the same policy. Although the new incidents postdated that prior lawsuit, the court stated that whether two actions involve the same transaction or series of transactions must be determined by giving the term "transaction" "a flexible, common-sense construction that recognizes the reality of the situation." *Id.* at 289 (quoting *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 91 (2d Cir. 1997)). Here, the court stated, "[t]he hundreds of new incidents about which plaintiffs now complain fall within the same queue

as those of injured officers who sought additional [sick] time ... under the earlier version." *Id.* at 289-90.

Similarly, in *Waldman v. Village of Kiryas Joel*, 207 F.3d 105 (2d Cir. 2000), the court, affirming a district court ruling that the plaintiff's housing discrimination claims were barred by *res judicata*, rejected the plaintiff's contention that the action "was really 'based upon' things that ha[d] happened since the filing of the prior suits," which had been settled and terminated. *Id.* at 113. Noting that the lawsuit before it shared extensive factual allegations with one of those prior suits (which the court referred to as the "overlapping facts"), the court stated that "[t]he 'overlapping facts' would seem, on their face, to constitute a common nucleus" of operative facts. *Id.* at 110. The court added that "it [wa]s patent, despite Waldman's contentions, that the overlapping facts were directly relevant to the earlier suit and were not included in that case only as background information." *Id.* at 111. Thus, the court concluded, "the new facts asserted in Waldman's complaint do not create a 'new' cause of action that did not exist when the prior suits were brought." *Id.* at 112. Instead, those new facts were "nothing more than additional instances of what was previously asserted." *Id.* at 113. *See also Pricaspian Development Corp. (Texas) v. Royal Dutch Shell, PLC*, 382 Fed.Appx. 100, 104 (2d Cir. 2010) (stating that plaintiff "misses the point that although its instant claim to unjust enrichment is indeed based upon a subsequent transaction, it arises from [the defendant's] alleged use of the same confidential information that was the basis for the claims asserted" in the prior action, which had been dismissed as time-barred, and that the plaintiff's "new claim is not based upon post-2003 facts in any meaningful way").

The same principles apply here. To the extent that plaintiff has alleged additional facts beyond what he alleged in *Casciani I*, those facts amount to nothing more than additional instances of the same types of acts alleged in the prior action, and in some instances this Court has already found those allegations wanting.

Plaintiff's "new" allegations about disparaging comments that Nesbitt allegedly made about him in a local newspaper, for example, were also presented in plaintiff's proposed amended

complaint in *Casciani I*. *See* 08-CV-6162, Dkt. #13-4 ¶¶ 96-101. The Court denied that motion on the ground that amendment would be futile, and in doing so I specifically held that plaintiff's allegations about Nesbitt's newspaper comments were insufficient, since they alleged "nothing more than Nesbitt's statement of his opinion about a matter of public concern." *See Casciani I*, 659 F.Supp.2d at 465-67.

In the instant case, plaintiff also alleges that in an article published in the *Webster Herald* on October 14, 2009, Nesbitt was quoted as saying that plaintiff's claims in *Casciani I* were "completely fabricated." Dkt. #2 ¶ 179. Those statements postdated plaintiff's proposed amended complaint in *Casciani I* and thus were not alleged in that case, but they fit well within the category of "additional instances of what was previously asserted" that the Second Circuit held are subject to the bar of *res judicata*. *Waldman*, 207 F.3d at 113. Assuming these allegations to be true, Nesbitt did no more than deny the truth of plaintiff's allegations in *Casciani I*, which is exactly what plaintiff had previously alleged that Nesbitt had done. My prior ruling that such allegations were insufficient to justify amendment of the complaint in the prior action thus bars these claims here as well.

Plaintiff's allegations about the Town increasing the assessment on his property, in retaliation for his filing and prosecution of the *Casciani I* action, *id.* ¶¶ 155-57, 184, was not alleged in that action, but it certainly could have been. The complaint here alleges that the Town imposed a 95% increase on the assessment of certain property owned by plaintiff on May 14, 2009. Dkt. #2 ¶ 155. The Court did not dismiss *Casciani I* until October 6, 2009, and there is no apparent reason why plaintiff could not have sought to raise that matter in *Casciani I*. In any event, this additional alleged act also is nothing more than an additional instance of the same type of retaliation alleged previously, and is also subject to dismissal for other reasons, as explained below.

Plaintiff's allegation that Hauza "threatened" two elderly neighbors of plaintiff to coerce them into attending a Town meeting to "complain" about plaintiff, and that he "induced them to write an editorial about the Plaintiff in the newspaper disparaging the Plaintiff," *id.* ¶ 159, likewise simply picks up where *Casciani I* left off, and alleges the same type of acts that were alleged in that

case. No specific dates are given for these alleged events, but the complaint indicates that they occurred in or about February 2009. *See* Dkt. #2 ¶ 158. They too, then, could have been raised in *Casciani I*. Even if these events occurred after *Casciani I* was dismissed, however, these allegations are based on the very same type of harassment, false accusations and retaliation that formed the basis of that prior lawsuit. *See*, *e.g.*, *Casciani I*, 659 F.Supp.2d at 464-65 (describing plaintiff's allegations that plaintiff was unfairly criticized at meetings of the town board and that a town official solicited a citizen to fabricate evidence against plaintiff).

Plaintiff further alleges that Hauza "unduly delayed a routine approval" of a permit application that plaintiff had filed, "for no other reason that [sic] to harass and retaliate against the plaintiff ... ." *Id.* ¶ 161. That appears to relate to the same matter as the allegations concerning plaintiff's neighbors, as all those allegations appear under the heading, "Hauza Complicates an Approval Process." Dkt. #2 at 47. As with the incidents concerning the neighbors, then, this could have been raised in *Casciani I* and, in any event, simply alleges more of the same type of acts that plaintiff alleged in that action.

I recognize that there is no absolute bar to filing a second action merely because the claims raised therein are based on events that occurred during the pendency of an earlier related action. In other words, there is no ironclad rule that any events that occur during the pendency of an action to which they somehow relate must be alleged in that action, or that such events can never form the basis for a subsequent action. *See Waldman*, 207 F.3d at 113 ("It is true that res judicata will not bar a suit based upon legally significant acts occurring after the filing of a prior suit that was itself based upon earlier acts"); *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1464 (2d Cir. 1996) ("If the second litigation involved different transactions, and especially subsequent transactions, there generally is no claim preclusion"). Here, however, plaintiff is attempting to assert what are essentially the *same* claims that he raised in *Casciani I*. The only thing that distinguishes them from the claims and allegations that he asserted in that action is his sprinkling in of a handful of events that occurred after he filed the complaint in *Casciani I*. All of plaintiff's allegations in the instant case, however, allege

the same types of acts, as part of the same general course of conduct, as those alleged in *Casciani I*. For the reasons stated above, such claims are barred by *res judicata*.

**II. Tax Injunction Act**

To the extent that plaintiff's claims are based on the Town's increase of the tax assessment on some of his properties, those claims are also barred by the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341, which provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." The Supreme Court has held that the principle of comity reflected in the TIA bars taxpayers from asserting § 1983 claims against the validity of state tax systems in federal courts. *See Fair Assessment in Real Estate Assn., Inc. v. McNary*, 454 U.S. 100, 116 (1981).

In partial recognition of that principle, plaintiff states that he withdraws his equal protection claims concerning the valuation of his properties. *See* Plaintiff's Mem. of Law (Dkt. #28-1) at 13. He has not, however, withdrawn his claim that the increase in his tax assessments was retaliatory, in violation of the First Amendment. *Id.*

Plaintiff has not cited any authority for his implied argument that the TIA does not cover retaliation claims, and in fact courts have held that it does. *See, e.g., Levy v. Pappas*, 510 F.3d 755, 762 (7th Cir. 2007), *abrogated on other grounds by Levin v. Commerce Energy, Inc.*, ___ U.S. ___, 130 S.Ct. 2323 (2010); *Schulz v. Washington County Bd. of Supervisors*, 349 F.Supp.2d 375, 378-81 (N.D.N.Y. 2004). The Court of Appeals has also held that New York courts provide a "plain, speedy and efficient" remedy for claims under 42 U.S.C. § 1983 and the New York State Constitution, *see Bernard v. Village of Spring Valley*, 30 F.3d 294, 297 (2d Cir. 1994). *See also Terio v. Carlin*, No. 10-CV-3201, 2010 WL 4117377, at *1 n.2 (S.D.N.Y. Oct. 18, 2010) ("It is well settled that the courts of the State of New York provide adequate remedies that afford plaintiffs an opportunity to raise all constitutional objections to the taxes imposed and the methods employed to collect them") (citing cases).

**III. Defamation**

Plaintiff states that to the extent that his claim for defamation under state law is duplicative of his First Amendment retaliation claim, he withdraws that claim. Plaintiff's Mem. of Law (Dkt. #28-1) at 13. For the reasons stated above, however, plaintiff's retaliation claim is subject to dismissal on grounds of *res judicata* and for the reasons stated in this Court's Decision and Order in *Casciani I*. *See* 659 F.Supp.2d at 466-67.

**IV. The Merits of Plaintiff's Claims**

My ruling that claim preclusion applies here renders it unnecessary for me to address the merits of plaintiff's claims. I note, however, that they would be subject to dismissal in any event.

Again, much of what this Court stated in its decision in *Casciani I* applies with equal force here. The same flaws that doomed that complaint are present in this case as well. With respect to his equal protection claim, for example, plaintiff has again failed to identify any similarly situated landowners who received preferential treatment compared with him, for impermissible reasons. *See id.* at 446-58. As to his First Amendment claim, plaintiff has not alleged facts showing that he was "'actually chilled' in exercising his rights." *Espinal v. Goord*, 558 F.3d 119, 129 n.7 (2d Cir. 2009) (quoting *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001)); *Casciani I*, 659 F.Supp.2d at 460-61.

In these respects, this case provides a good example of the reasons for the *res judicata* doctrine. The parties have litigated these same claims already, and both this Court and the Court of Appeals have addressed those claims and found them to be completely meritless. To permit plaintiff to relitigate these matters now, based only on the addition of a few new factual allegations, would only lead to a waste of judicial resources and do a disservice to the Court and to the defendants.

Indeed, plaintiff's filing of this lawsuit, the substance of which is nearly identical to *Casciani I*, just eight days after the Court dismissed that case as meritless, is so egregious as to be potentially sanctionable. *See, e.g., Libaire v. Kaplan*, 395 Fed.Appx. 732, 736 (2d Cir. 2010) (affirming award

of sanctions against litigant who filed lawsuit alleging claims that were virtually identical to those raised in previous lawsuit that had been dismissed); *Srivastava v. Rosenberg*, 88 Fed.Appx. 950, at 950-51 (7th Cir. 2004) (warning plaintiff that she would risk sanctions if she continued to ignore *res judicata*); *Gresham v. Miles*, 82 Fed.Appx. 396, 396 (5th Cir. 2003) (ordering plaintiff to pay $150 in sanctions to clerk of the court, where plaintiff "continue[d] to file repetitive pleadings asserting grounds for relief identical to those previously held to be without merit"). Plaintiff's failure to voluntarily withdraw this lawsuit after my dismissal of *Casciani I* was affirmed on appeal only compounded plaintiff's and his attorney's culpability in that regard. *See Libaire*, 395 Fed.Appx. at 736 (noting that dismissal of prior suit had been affirmed by the time that plaintiff filed second, nearly identical suit). While the Court declines to take steps to impose sanctions at this time, I warn plaintiff and his attorney that further efforts on their part to pursue these patently meritless claims may result in sanctions being imposed on them, under either Rule 11, 28 U.S.C. § 1927, or this Court's inherent power. *See Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323, 333-35 (2d Cir. 1999).

## CONCLUSION

Defendants' motion to dismiss (Dkt. #12, #16) is granted, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
October 4, 2011.